**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

ROBERT H. VAN HORN, a/k/a
ROBERT VAN HORN, a/k/a R.H. VAN
HORN,

        Plaintiff,

  and

JOHN CARL VAN HORN,

        Involuntary Plaintiff,

vs.

WILLIAM VAN HORN AND JUNE
LINDER,

        Defendants.

No. C04-4020-MWB


**MEMORANDUM OPINION AND
ORDER REGARDING THE
DEFENDANTS' MOTION TO
CONFIRM ARBITRATION AWARD
AND REQUEST FOR ENTRY OF
JUDGMENT**

———————————

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *B. The Arbitral Decision And Award* . . . . . . . . . . . . . . . . . . . . . . 7
        *1. Findings of fact* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *2. Legal conclusions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    *C. Post-Arbitration Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . 11

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *A. Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.   Plaintiff's Collateral Attack On This Court's February 4, 2005
     Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
C.   Confirmation Of The Arbitration Award . . . . . . . . . . . . . . . . . . . .   15
     1.    Did the parties agree to judicial confirmation? . . . . . . . . .   17
     2.    Is the application for confirmation properly before this
           court? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
D.   Modification, Correction Or Vacation Of The Arbitration Award . .   18
     1.    Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
           a.    Statutory standards . . . . . . . . . . . . . . . . . . . . . . .   20
           b.    Extra-statutory standards . . . . . . . . . . . . . . . . . . .   22
                 i.    Irrationality and manifest disregard of the
                       law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23
                 ii. Arbitrariness and contravention of public policy .   26
     2.    Application of the standards . . . . . . . . . . . . . . . . . . . . .   30
     3.    R.H. Van Horn's statutory challenge . . . . . . . . . . . . . . .   30
     4.    R.H. Van Horn's extra-statutory challenges . . . . . . . . . . .   33
           a.    "Irrationality" challenge . . . . . . . . . . . . . . . . . . .   33
           b.    "Manifest disregard of the law" challenge . . . . . . .   39
E.   Defendants' Motion To Dismiss Remaining Counterclaims . . . . . . .   43

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43

"How sharper than a serpent's tooth it is
To have a thankless child!"
WILLIAM SHAKESPEARE, KING LEAR, act I, sc. 4 (Cambridge Univ. Press 2000) (1605).

This dispute between a father and his children over ownership of the family
corporation is reminiscent of the family fracas depicted in Shakespeare's
King Lear.[1]  In this stock ownership dispute, two of the children, the defendants, have

---

[1]King Lear recounts the events surrounding the aging King Lear's decision to divvy
(continued...)

filed a motion requesting this court to confirm an arbitration award, which declared the defendants owners of over fifty-percent of the issued stock in the family business. The father and another son, the plaintiff and involuntary plaintiff, respectively, have resisted entry of judgment by this court and request the award be vacated asserting, in essence, that the father has been the victim of ingratitude akin to that endured by King Lear.

## I. INTRODUCTION

Plaintiff Robert H. Van Horn, also known as Robert Van Horn or R.H. Van Horn ("R.H. Van Horn"), is the father of four children: William Van Horn ("William"), June Linder ("June"), John C. Van Horn ("John") and Jane Thompson ("Jane"). R.H. Van Horn is also the President of the Glidden First National Holding Company ("Holding Company"), an entity organized in 1979 that owns all of the outstanding shares in the First Bank & Trust Company in Glidden, Iowa ("Bank"). Eventually, a dispute arose between R.H. Van Horn and two of his children, defendants William and June, as to the nature and extent of ownership of the shares in the Holding Company. R.H. Van Horn contends he is the sole and only owner of *all* of the shares of stock in the Holding Company. Conversely, William and June argue they have had

---

[1](…continued)
up his kingdom among his three daughters, Cordelia, Regan and Goneril. Looking for his progeny to bask him in love, Lear decides he will bequeath the greatest riches upon whichever daughter makes the most sycophantic incantation of devotion and adoration. When his favorite daughter, Cordelia, fails to be sufficiently obsequious in the eyes of the King, he disowns her. The King immediately realizes he has made a mistake of grave proportions as Regan and Goneril proceed to undermine the scant authority the King retained. Unable to deal with the betrayal, King Lear goes insane. Much treachery, stabbing, poisoning, and hanging ensue, and the quartet ends up dead by the closing act. *See generally* WILLIAM SHAKESPEARE, KING LEAR (Cambridge Univ. Press 2000) (1605).

ownership of a portion of the Holding Company's shares since its inception.

## A. *Procedural Background*

The dispute over ownership of the Holding Company culminated in R.H. Van Horn filing a complaint with this court on April 5, 2004, seeking declaratory judgment that he is the sole and only owner, legal and equitable, of all the shares of the Holding Company. (Doc. No. 2). In his complaint, R.H. Van Horn alleged jurisdiction was proper on diversity of citizenship grounds under 28 U.S.C. § 1332(a)(1) as complete diversity existed between the parties, and the amount in controversy exceeded $75,000.00. Complete diversity was premised on R.H. Van Horn's Iowa citizenship, William's Colorado citizenship and June's Illinois citizenship. The Answer and Counterclaims of William Van Horn and June Linder (Doc. No. 8) was filed by the defendants on July 6, 2004. In their answer, the defendants denied R.H. Van Horn's claims to full ownership of the Holding Company stock and asserted a number of affirmative defenses. Additionally, the defendants filed three counterclaims, the first seeking declaratory judgment on the issue of their ownership of shares in the Holding Company, the second claiming a breach of fiduciary duty on the part of R.H. Van Horn, and the third alleging that R.H. Van Horn wrongfully converted their shares of stock. R.H. Van Horn filed an Answer By Plaintiff (Defendant to Counterclaim) to Counterclaim of Defendants William Van Horn and June Linder (Doc. No. 11) on August 26, 2004, in which he categorically denied all pertinent facts relating to the defendants' counterclaims.

On October 15, 2004, the defendants filed a Motion to Bring in Third-Party Defendants John Van Horn and Glidden First National Holding Company pursuant to Rule 14 of the Federal Rules of Civil Procedure. (Doc. No. 19). R.H. Van Horn

resisted the defendants' motion, and requested oral argument on the matter. (Doc. No. 21). William and June filed a reply in which they conceded that Rule 14 did not allow for the filing of a third-party complaint against John and the Holding Company in this particular situation. However, in light of the fact that their original argument was moot, William and June asserted that pursuant to Rule 12(h)(2) their motion should be considered as a motion to dismiss for failure to join indispensable parties under Rule 19(b), or as one for judgment on the pleadings. (Doc. No. 25). On November 19, 2004, United States Magistrate Judge Paul A. Zoss entered an order declining William and June's invitation to treat the pending motion as a motion to dismiss under Rule 12(h)(2), and likewise denied the defendants' motion to file a third-party complaint. (Doc. No. 27). Judge Zoss further stated that the defendants were "free to file a proper motion to dismiss, if desired, providing the plaintiffs [sic] with the opportunity to respond to such a motion." *Id.*

On December 23, 2004, William and June filed a Motion to Dismiss or for Judgment on the Pleadings; or, in the Alternative, Motion for Stay Pending Arbitration. (Doc. No. 33). In this motion, the defendants asserted that this matter should be dismissed for failure to join indispensable parties under Rule 19, and that joinder of these parties would destroy complete diversity and deprive the court of subject matter jurisdiction. Alternatively, the defendants asserted that an agreement between the parties and federal and state banking regulators at a teleconference on December 10, 2003—memorialized in a letter dated December 11, 2003 ("the Letter")—required the parties to submit any ongoing disputes regarding ownership of the Holding Company's shares to arbitration. Therefore, the defendants requested that the suit be dismissed, or stayed, pending arbitration. On January 6, 2005, R.H. Van Horn filed his resistance in which he generally asserted that joinder of John and the Holding Company was not

necessary for adjudication, and that if they must be joined as indispensable parties, they should be aligned as plaintiffs, not defendants—thus preserving diversity jurisdiction. (Doc. No. 39). Moreover, R.H. Van Horn asserted that the Letter, which the defendants held out as an agreement to arbitrate, was never signed by R.H. Van Horn, and merely required the parties to commit to a mechanism designed to resolve their dispute, which R.H. Van Horn contended he satisfied by filing this suit. William and June filed their reply brief on January 15, 2005, contending that John and the Holding Company were indispensable parties—and while conceding that John could be aligned as an involuntary plaintiff, pursuing their position that the Holding Company was most properly aligned as a defendant. (Doc. No. 44). Additionally, the defendants continued to assert that the parties agreed to submit issues surrounding ownership of the Holding Company shares to binding arbitration, that the plaintiff did sign the December 12, 2003, Letter, and that the matter should be stayed pending arbitration as mandated by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and/or Iowa Code chapter 679A. On February 4, 2005, this court entered a memorandum order and opinion granting in part and denying in part the defendants' motion. The court concluded that John Van Horn should be joined as involuntary plaintiff to the action pursuant to Rule 19, but that the Holding Company was not an indispensable party and therefore, should not be joined. Accordingly, because John's joinder as an involuntary plaintiff did not divest the court of diversity jurisdiction, and as the Holding Company was not an indispensable party, the court denied the defendants' motion to dismiss for failure to join an indispensable party. The court further concluded that the lawsuit, arising from a dispute between the parties as to proper ownership of the Holding Company, should be stayed and the dispute arbitrated pursuant to the express terms of the Letter.

Pursuant to this court's February 4, 2005 order, the parties filed a Stipulated

Scheduling Order for Arbitration Proceeding on May 2, 2005 (Doc. No. 54), in which the parties agreed to have David J. Blair of Cherokee, Iowa serve as the arbitrator. The parties further agreed that the arbitration of their dispute would follow the "principles and provisions set forth in the American Arbitration Association's Commercial Arbitration Rules, Rules R-1 through R-54, as found on the AAA's website." (Doc. No. 54, at 2). The matter was heard in arbitration on July 18, 19, and 20, 2005, at the Carroll County Courthouse in Carroll, Iowa.

## B. The Arbitral Decision And Award

On August 21, 2005, David J. Blair issued his decision and award, in favor of the defendants. In his decision, the arbitrator made extensive findings of fact regarding the formation and stock ownership of the Holding Company. This court will briefly summarize the arbitrator's findings of fact and legal conclusions.

### 1. Findings of fact

R.H. Van Horn formed the Holding Company by filing an application with the Federal Reserve in November 1979. R.H. Van Horn's primary motivation in forming the Holding Company was for the purposes of estate planning and tax avoidance. Thus, in order to achieve these ends, it was necessary to place ownership of the common stock, which was subject to appreciation, in the hands of his children. R.H. Van Horn retained ownership of the preferred stock and debentures not subject to appreciation. The application R.H. Van Horn filed with the Federal Reserve indicated that initial ownership of the Holding Company was to be allocated based on the ownership of the Bank's shares. At the time the application was filed, the ownership of the Bank shares broke down as follows:

R.H. Van Horn        700 shares

| | |
|---|---|
| John | 350 shares |
| June | 350 shares |
| Jane | 350 shares |
| William | 300 shares |
| Others | 250 shares |

The application projected the individual ownership of the Holding Company would be divided as follows:

| | |
|---|---|
| R.H. Van Horn | 29,184 preferred shares plus debentures of $500,460 |
| John | 39,900 common shares |
| June | 39,900 common shares |
| Jane | 39,900 common shares |
| William | 34,200 common shares |

In accord with the stated objectives contained in the application filed with the Federal Reserve, the children surrendered their stock in the Bank upon the formation of the Holding Company. In consideration of surrendering their Bank stock, they received Holding Company stock. Stock certificates in the Holding Company were issued sometime in March of 1980 as follows:

| | |
|---|---|
| R.H. Van Horn | 26,400 preferred shares, later converted to 7,500 common shares |
| John | 38,500 common shares |
| June | 38,500 common shares |
| William | 38,500 common shares |
| Jane | 33,000 common shares |

William and June, the two children involved in the current litigation, never had physical possession of their Holding Company stock certificates. However, R.H. Van

Horn represented that their stock certificates were always freely available to them and that nondelivery of the certificates was immaterial to their ownership of the stock.

In May of 1980, R.H. Van Horn convened a meeting of the directors of the Holding Company in Colorado Springs, Colorado. All of the directors—R.H. Van Horn, John, June, William and Jane—were present. Two sets of minutes, both created by R.H. Van Horn and dated May 24, 1980, emerged from this meeting. The "short form" of the minutes reflects the directors conducted regular business and voted on routine business resolutions. The long form of the minutes, however, includes an additional paragraph which in essence functioned to restrict the stock ownership of the children in favor of R.H. Van Horn's unlimited discretion as to ownership and transfer of shares. The long form indicates that all of R.H. Van Horn's children, in their capacity as directors, agreed to R.H. Van Horn's request for unlimited discretion in ownership and transfer of the shares. However, no agreement was ever signed by the directors and shareholders, nor were the by-laws amended to reflect such a change in the status quo of the Holding Company. William and June deny any knowledge of such a resolution and dispute such a resolution was ever voted upon or passed at the directors' meeting that took place in May of 1980. Both the long and short forms of the minutes have since been relied upon by R.H. Van Horn. The long form minutes have been used by R.H. Van Horn, in both the current proceeding and prior litigation, to justify unilateral transfers of the Holding Company's stock without knowledge or consent of the other directors and owners of the shares. The short form minutes were copied from the minute book and provided to examiners from the Federal Reserve during an unannounced visit to the bank on November 2, 1995. Moreover, despite what is reflected in the long form minutes, R.H. Van Horn has reported to various judges, courts, attorneys, examiners, regulators, and tax authorities of the United States

and the State of Iowa, among others, that the total amount of voting common stock in the Holding Company is 123,300 shares common and that the ownership of such shares is allocated as follows:

| | |
|---|---|
| R.H. Van Horn | 7,500 shares common |
| John | 38,500 shares common |
| June | 38,500 shares common |
| William | 38,500 shares common[2] |

## 2.    *Legal conclusions*

Based on the aforementioned factual findings, the arbitrator concluded that William and June owned stock in the Bank, both individually and jointly with their parents. As such, at the time the Holding Company was formed, the children's Bank stock was converted into Holding Company stock. Although R.H. Van Horn contended the Holding Company stock was a gift and that the gift was never completed because the essential element of "delivery" never occurred, the arbitrator rejected this contention and concluded this was not a gift case because William and June provided consideration for their shares in the Holding Company by exchanging their shares in the Bank for stock in the Holding Company. Further, even if it were a gift case, the arbitrator concluded constructive delivery occurred based upon R.H. Van Horn's

---

[2] Pursuant to a prior proceeding, Jane surrendered her 33,000 shares to the Holding Company in exchange for cash. Jane's shares were converted into "treasury shares." Treasury stock is "[s]tock which has been issued as fully paid to stockholders and subsequently reacquired by the corporation to be used by it in furtherance of its corporate purposes." BLACK'S LAW DICTIONARY 1502 (6th ed. 1990). Treasury stock differs from shares that are considered "authorized but unissued." *Id.* For this reason, the treasury stock is correctly not reflected in the total amount or allocation of common shares of the Holding Company.

repeated representations that the stock certificates were available to William and June.

Additionally, the arbitrator determined that the long form minutes were "likely fictional and not persuasive" in relation to R.H. Van Horn's claims of ownership. As such, the arbitrator concluded as follows:

> RH [Van Horn] has reported the same stock ownership allocation to judges, courts, attorneys, examiners, regulators, and tax authorities of the United States and the State of Iowa among others. These recitations establish the fact of the matter. RH's testimony to the contrary is not credible. I find, conclude and AWARD that the stock ownership of the Holding Company is as follows:
>
> | | |
> |---|---|
> | RH | 7,500 shares common |
> | John | 38,500 shares common |
> | June | 38,500 shares common |
> | [William] | 38,500 shares common |
>
> This is the total amount of voting common stock authorized, issued and outstanding. The total is 123,000 shares common.

(Doc. No. 56, at Exhibit C) (Arbitrator's Decision and Award).

## C. Post-Arbitration Proceedings

On August 31, 2005, R.H. Van Horn filed a post-award Motion to Reconsider and Motion to Supplement the Record with the arbitrator. On September 1, 2005, William and June filed a resistance to the post-award motions. On this same date, William and June further filed with this court a Motion to Confirm Arbitration Award and Request for Entry of Judgment (Doc. No. 56), a Dismissal of Counterclaims Against Plaintiff R.H. Van Horn (Doc. No. 57) and a Dismissal of Counterclaims Against Involuntary Plaintiff John Carl Van Horn (Doc. No. 58). In their motion to

confirm the arbitration award, William and June requested this court lift the stay imposed by the February 4, 2005 order and confirm the arbitrator's decision and award pursuant to 9 U.S.C. § 9. They further requested that this court order each party to bear the expense of its own witnesses and that the remainder of the arbitration costs be divided evenly between the parties. In their motions to dismiss, William and June moved to dismiss their remaining counterclaims of breach of fiduciary duty and conversion against both R.H. Van Horn and John. On September 9, 2005, R.H. Van Horn filed a resistance to the defendants' Motion to Confirm Arbitration and Request for Entry of Judgment (Doc. No. 59).[3] On September 15, 2005, the arbitrator overruled both of the plaintiffs' post-award motions. Finding that the arbitration of the parties' dispute is now fully completed, the court **grants** the defendants' request to lift the temporary stay. The matter is now fully submitted and ready for a determination by this court.

## II. LEGAL ANALYSIS

### A. Arguments Of The Parties

In their motion to confirm the arbitration award, William and June assert the arbitrator's award should be confirmed by this court because there is no evidence the proceedings or the decision of the arbitrator were tainted by corruption, fraud or undue means. Additionally, they aver the arbitrator's reasoning and legal conclusions were

---

[3]In his resistance, R.H. Van Horn failed to even remotely articulate the legal or factual basis for his resistance in contravention to N.D. IOWA LR 7.1(e). Accordingly, this court issued an order on September 20, 2005, granting R.H. Van Horn additional time in which to file a brief in support of his resistance. (Doc. No. 61). In compliance with the court's order, R.H. Van Horn filed a brief in support of his resistance on September 30, 2005. (Doc. No. 62).

clearly articulated in his written opinion and provide a more than ample basis for this court to confirm the award.

In response, R.H. Van Horn launches a two-pronged attack in resistance to the defendants' motion to confirm the arbitration award. First, he contends the parties' dispute should have never been submitted to arbitration. Second, he argues the arbitrator's award should not be confirmed on a number of grounds. Specifically, R.H. Van Horn avers that, even if the case was properly before the arbitrator, the award should be vacated because it was (1) arbitrary and capricious, (2) contrary to public policy, (3) irrational, (4) in manifest disregard of the law, and (5) imperfectly executed. The court will first address R.H. Van Horn's challenge to the submission of the case for arbitration, and if warranted, will proceed to address Van Horn's arguments with respect to vacation of the arbitral award.

### B. Plaintiff's Collateral Attack On This Court's February 4, 2005 Order

R.H. Van Horn, in his resistance to the defendants' application for confirmation of the arbitration award, renews his previous contention that the parties never agreed to arbitrate their claims, and as such, avers the case was improperly submitted to arbitration. The issues currently raised by the plaintiff were previously resolved, in favor of the defendants, by this court in its February 4, 2005 order. Accordingly, this court must determine whether the February 4, 2005 order should be revisited or whether it constitutes the law of the case and therefore, should not be disturbed.

"Law of the case is a doctrine of discretion, not a command to the courts." *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1440 (8th Cir. 1986) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983); *In re Exterior Siding & Aluminum Coil Antitrust Litig.*, 696 F.2d 613, 616 (8th Cir.

1982)).  Unlike its quasi-related counterparts of res judicata and collateral estoppel, which have precise requirements, the law of the case doctrine is amorphous in nature. *Arizona v. California*, 460 U.S. at 618.  The law of the case doctrine posits that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Little Earth*, 807 F.2d at 1441 (quoting *Arizona v. California*, 460 U.S. at 618).  The doctrine functions to protect the settled expectations of parties, ensure uniformity of decisions, and promote judicial efficiency by preventing relitigation of the settled issues in a case.  *Id.*  Under law of the case doctrine, a court typically need not depart from a prior holding unless "substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice." *Id.* (citing *United States v. Unger*, 700 F.2d 445, 450 n.10 (8th Cir. 1983)); *see also Arizona v. California*, 460 U.S. at 618 n.8.

Upon a thorough review of its February 4, 2005 order and the plaintiff's renewed arguments, this court concludes the facts of this case warrant the employment of the law of the case doctrine.  The plaintiff has neither supplanted the record with substantially different evidence or arguments, nor can this court conclude its prior holding was clearly erroneous or works a manifest injustice.  Moreover, more than eight months have passed since this court stayed the action pending arbitration.  The parties have already fully arbitrated their claims and the arbitrator rendered a decision.  These factors alone warrant employment of the doctrine based on judicial efficiency.  The plaintiff was given one good bite at the apple and should not have a second, at least under the purview of this court.  Consequently, this court will not revisit its prior holding.  Rather, this issue, if still contested, would be more appropriately raised on

appeal to the appellate court.[4]  Accordingly, the court will proceed to address the remainder of R.H. Van Horn's contentions.

## C.  Confirmation Of The Arbitration Award

Before addressing the merits of the parties' contentions with respect to confirmation of the arbitral award, this court must first determine if the application is properly before it.  Section 9 of Title 9 of the United States Codes contemplates judicial confirmation of an arbitral award.  9 U.S.C. § 9.  "The confirmation of an arbitration award converts the final arbitration award into the judgment of the court."  *Irving R. Boody & Co. v. Win Holdings Int'l, Inc.*, 213 F. Supp. 2d 378, 380 (S.D.N.Y. 2002).  Pursuant to  9 U.S.C. § 9, a party to an arbitration agreement may apply for judicial confirmation of an arbitral award if the parties, in their agreement, "have agreed that judgment of the court shall be entered upon the award . . . ."  The parties may identify

---

[4]It is a logical assumption that the plaintiff advanced this argument in order to preserve the issue for a possible appeal.  The court notes, however, that resubmission of the issue to this court was not necessary for issue preservation purposes. This is so because the plaintiff was precluded from immediately appealing this court's decision to stay the action pending arbitration by the operation of 9 U.S.C. § 16.  Pursuant to that section, although an order *denying* a stay pending arbitration is immediately appealable, an order *granting* a stay pending arbitration is considered to be interlocutory and as such, is non-appealable unless it is a "final" decision and the district court has certified the issue for appeal pursuant to 28 U.S.C. § 1292(b).  *See*  9 U.S.C. § 16; *see also Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.*, 179 F.3d 1095, 1102 (8th Cir. 1999) ("An order granting arbitration may be appealed if it is a final order [and] certified by the district court . . . .").  Because this court did not certify the issue for appeal in its February 4, 2005 decision, it was not immediately appealable.  Accordingly, assuming *arguendo*, the plaintiff did not renew his resistance to this court's decision to stay the action pending arbitration, the plaintiff would not be barred from pursuing the issue on appeal.

a specific court or courts to which the application for confirmation can be made. *See* 9 U.S.C. § 9 ("[A]ny party to the arbitration may apply to the court so specified for an order confirming the award . . . ."). If a court is not specified in the parties' agreement, then § 9 directs that the confirmation application can be made to "the United States Court in and for the district within such award was made."[5] *Id.* Based on the foregoing, in order to properly confirm the arbitration award in this matter, this court must first determine (1) whether the parties agreed to such a judicial confirmation and (2) if this court constitutes a proper court to enter a confirmation order of the arbitral award, either pursuant to the parties' agreement or the general venue provisions of 28 U.S.C. § 1391(a)(2).

---

[5]Although at first blush this language may appear to limit where a party can file an application for judicial confirmation to the district in which the award was made, the United States Supreme Court has stated that the venue provisions of § 9 must be read in conjunction with the general venue provisions contained in 28 U.S.C. § 1391(a)(2). *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 204 (2000). Against this backdrop, the United States Supreme Court has held that the venue provisions contained in § 9 are permissive, as opposed to restrictive, meaning venue is not unduly restricted to the district in which the arbitration occurred. *See id.* Thus, under *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.* and its progeny, an application for confirmation of an arbitral award does not necessarily have to be made in the district in where the award was made. *Id.*; *see Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 685-86 (8th Cir. 2002) (citing *Cortez* for the proposition that a district court that has entered a stay of action pending arbitration is granted the power to confirm any subsequent arbitration award); *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 338 (4th Cir. 2002) (citing *Cortez* for the proposition that under the Federal Arbitration Act, venue is not limited to the district of the arbitration). Rather, in cases where a court is not specified in the parties' agreement, an applicant can file a confirmation application in any district proper under the general venue statute. *See Cortez*, 529 U.S. at 204; *see also Smart*, 307 F.3d at 685-86; *Barker*, 297 F.3d at 338.

**1.	Did the parties agree to judicial confirmation?**

The first question this court must answer is whether the parties agreed to judicial confirmation of the arbitral award. Thus, an examination of what qualifies as an "agreement" is necessary. The Eighth Circuit has held that the parties to an arbitration agreement must have an express affirmative agreement providing for judicial confirmation of an arbitral award in order for a federal court to have confirmation authority under 9 U.S.C. § 9. *See PVI, Inc. v. Ratiopharm GmbH*, 135 F.3d 1252, 1253 (8th Cir. 1998) (finding judicial confirmation unavailable where the parties did not specifically agree to such in an express, written agreement); *see also Milk Drivers, Dairy & Ice Cream Employees, Local Union No. 387 v. Roberts Dairy*, 294 F. Supp. 2d 1050, 1055 (S.D. Iowa 2003). The mere inclusion of the statement in an agreement between the parties that the arbitration is final and binding is insufficient to make the award enforceable under 9 U.S.C. § 9. *See PVI*, 135 F.3d at 1253.

Fortunately, in this case, the parties did indeed have an express written agreement acquiescing to judicial confirmation of the arbitration award. Prior to arbitrating their claims, the parties filed a Stipulated Scheduling Order for Arbitration Proceeding. (Doc. No. 54). The last paragraph of the order states, "Unless otherwise governed by the above stipulation . . . this proceeding shall follow the principles and provisions set forth in the American Arbitration Association's [AAA's] Commercial Arbitration Rules, Rules R-1 through R-54, as found on the AAA's website." *Id.* Judicial confirmation of the arbitrator's award is not addressed in the parties' stipulation. Consequently, the AAA's Commercial Arbitration Rules govern this particular situation. Rule 48(c) of the AAA's Commercial Arbitration Rules addresses judicial confirmation of an arbitration award and provides that "[p]arties to an arbitration under these rules shall be deemed to have consented that judgment upon the

arbitration award may be entered in any federal or state court having jurisdiction thereof." AM. ARBITRATION ASSOC., COMMERCIAL ARBITRATION RULES, R. 48(c), *available at* http://www.adr.org/sp.asp?id=22440 (Sept. 15, 2005). Thus, by incorporating Rule 48 into their agreement by reference, the parties inherently agreed to allow confirmation of the arbitration award by any court having jurisdiction over the matter.

### 2. *Is the application for confirmation properly before this court?*

As determined previously, the parties agreed to judicial confirmation of the arbitral award by any court having jurisdiction over the matter. The plaintiff originally filed the present action in this court pursuant to its diversity jurisdiction. This court stayed the matter, pending arbitration. Thus, this court falls under the gamut of the parties' specifications set forth in their stipulated agreement pursuant to its diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Consequently, the defendants' application to confirm is properly before this court, and this court may properly consider the arguments of the parties with respect to confirmation and vacation of the arbitral award. *See* 9 U.S.C. § 9; *see also Smart,* 307 F.3d at 685-86 (noting a district court that has entered a stay of action pending arbitration is granted the power to confirm any subsequent arbitration award) (citing *Cortez Byrd Chips*, 529 U.S. at 202).

### D. *Modification, Correction Or Vacation Of The Arbitration Award*

### 1. *Applicable standards*

Arbitration agreements are governed by the Federal Arbitration Act (FAA), 9 U.S.C. § § 1-16. Congress enacted the FAA in 1925 for the purpose of reversing "the longstanding judicial hostility toward arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Hoffman v. Cargill*, 236 F.3d

458, 461 (8th Cir. 2001). Consequently, the FAA reflects "a liberal federal policy favoring arbitration agreements" and compels courts to be highly deferential to the arbitration process and its results. *See Hoffman*, 236 F.3d at 461 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Particularly relevant to the facts of this case is Section 9 of the FAA, which mandates that a federal district court having jurisdiction over the matter "must grant" a motion to confirm an arbitration award, "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9; *see Gas Aggregation Servs., Inc. v. Howard Avista Energy, L.L.C.*, 319 F.3d 1060, 1064 (8th Cir. 2003) ("[S]o 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' arbitration awards must be confirmed.") (quoting *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B*, 284 F.3d 821, 824 (8th Cir. 2002)); *UHC Mgmt. Co. v. Computer Scis.Corp.*, 148 F.3d 992, 997 (8th Cir. 1998) (making this observation); *Domino Group, Inc. v. Charlie Parker Mem'l Found.*, 985 F.2d 417, 420 (8th Cir. 1993) (quoting 9 U.S.C. § 9); *accord. P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 870 (10th Cir. 1999) (noting a reviewing court must confirm an arbitration award upon application to the court unless a statutory basis for vacating the award exists); *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. 1987) ("Absent a statutory basis for modification or vacatur, the district court's task [is] to confirm the arbitrator's final award as mandated by section 9 of the [Federal Arbitration] Act."). Based on the statutory text of § 9 of the FAA, it naturally follows that "[j]udicial review of an arbitration award is extremely limited . . . ." *Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588, 594 (8th Cir. 1998). More specifically, as the Eighth Circuit Court of Appeals recently observed:

Congress has ordained a specific, self-limiting procedure for

how such a review is to occur. Section 9 of the FAA provides that federal courts "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." Congress did not authorize *de novo* review of such an award on its merits; it commanded that when the exceptions do not apply, a federal court has no choice but to confirm.

*UHC Mgmt. Co.*, 148 F.3d at 997 (quoting 9 U.S.C. § 9). Accordingly, a reviewing court may not set aside an award simply because the court "might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts." *Id.* at 998. Thus, the first place to look for standards for judicial review of an arbitration award is in the FAA itself.

### a.    *Statutory standards*

The FAA provides for judicial vacation of arbitration awards, in pertinent part, as follows:

§ 10. Same; vacation; grounds; rehearing
(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(1) Where the award was procured by corruption, fraud, or undue means.
(2) Where there was evident partiality or corruption in the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite

award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).[6] Section 11 of the FAA provides further grounds for "modification or correction" of an arbitration award by the court,[7] but the parties have not asserted that § 11 is pertinent here.

---

[6] Subsection (a) provides further that "[w]here an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators." 9 U.S.C. § 10(a)(5). This subdivision will become pertinent here only if this court vacates the arbitration award in question; in such circumstances, this court may consider whether the matter should be redirected to the arbitrators.

[7] Section 11 of the FAA provides as follows:

§ 11. Same; modification or correction; grounds; order
In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—
(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11; *see also Lee v. Chica*, 983 F.2d 883, 888 (8th Cir.) (discussing § 11 grounds for modification or correction of an arbitration award), *cert. denied*, 510 U.S. 906 (1993).

### b.    Extra-statutory standards

In addition to the statutory standards outlined in the FAA, a limited number of "extra-statutory" standards have also been recognized. *See, e.g.*, *Hoffman*, 236 F.3d at 458 (outlining two extra-statutory standards recognized within the Eighth Circuit). The Tenth Circuit Court of Appeals has observed that "'[f]ederal courts have never limited their scope of review [of an arbitration award] to a strict reading of [9 U.S.C. § 10].'" *Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012 (10th Cir. 1994) (quoting *Jenkins v. Prudential-Bache Sec., Inc.*, 847 F.2d 631, 633 (10th Cir. 1988)); *see also Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) ("A court may only vacate an arbitration award for reasons enumerated in the Federal Arbitration Act, 9 U.S.C. § 10, or for a handful of judicially created reasons.").[8] Thus, the first question in this part of the court's legal analysis is whether the court may consider additional grounds to confirm or vacate an arbitration award beyond those stated in § 10(a)—and if so, which ones.

---

[8] Although the court in *Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d at 1012, asserted that the federal courts have "never" limited their review to a strict reading of 9 U.S.C. § 10, it appears that the Fifth Circuit Court of Appeals has virtually never permitted review of an arbitration award outside of the statutory grounds stated in the FAA. *See Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847, 850 (5th Cir. 1995) ("Under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, we can only disturb an arbitration award on the grounds set out in that Act."); *McIlroy v. PaineWebber, Inc.*, 989 F.2d 817, 820 n.2 (5th Cir. 1993) (rejecting any extra-statutory grounds for vacating arbitration awards); *see also Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1460-61 (11th Cir. 1997) (noting that the Fifth Circuit Court of Appeals stands alone in this regard, and noting one exception).

***i.*** ***Irrationality and manifest disregard of the law***.  The Eighth Circuit Court of

Appeals has elsewhere considered review standards beyond those listed in sections 10

and 11 of the FAA.  For example, in *Val-U Construction Company v. Rosebud Sioux*

*Tribe*, 146 F.3d 573 (8th Cir. 1998), the court began by noting that "'[j]udicial review

of an arbitration award is extremely limited.'"  146 F.3d at 578 (quoting *Kiernan*, 137

F.3d at 594).  However, the court continued, "'Beyond the grounds for vacation

provided in the FAA, an award will only be set aside where "'it is completely irrational

or evidences a manifest disregard for the law.'"  *Id.* (quoting *Kiernan*, 137 F.3d at

594); *see Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 749 (8th Cir.)

("There is simply no suggestion in the findings made by the arbitrators on the

procedural arbitrability question that they expressly flouted the law in reaching their

decision or otherwise acted irrationally."), *cert. denied*, 476 U.S. 1141 (1986).

However, the Eighth Circuit has explained that these particular extra-statutory grounds

for vacation are "extremely narrow."  *Hoffman*, 236 F.3d at 458.  In *Stroh Container*

*Co. v. Delphi Industries, Inc.*, for example, the court explained that "irrationality"

means that the arbitration award "fails to draw its 'essence' from the agreement, or

contravenes a deeply rooted public policy."  783 F.2d at 749-750 (internal citations

omitted); *see Homestake Mining Co. v. United Steelworkers of Am., Local 7044*, 153

F.3d 678, 680-81 (8th Cir. 1998) (reviewing arbitration of a collective bargaining

agreement under the "irrationality" and "manifest disregard" standards articulated in

*Lee*, 983 F.2d at 885, and *Stroh Container Co.*, 783 F.2d at 750, and considering

violation of public policy as part of the "irrationality" review).  Other Circuit Courts of

Appeals have also recognized "irrationality" as an extra-statutory ground for review of

an arbitration award.  *See Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d

188, 193-94 & n.5 (4th Cir.) (decision of the Fourth Circuit Court of Appeals stating,

"An arbitration award will not be set aside unless it is irrational or evidences manifest disregard for law," relying on *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991), but concluding that the arbitrator did not "irrationally" disregard exclusions in the contract or make an improper valuation of items under the contract, because he relied on, among other evidence, the expert testimony of a certified public accountant on the question of inventory valuation), *cert. denied*, 525 U.S. 876 (1998); *Lapine Tech. Corp. v. Kyocera Corp.*, 130 F.3d 884, 888 (9th Cir. 1997) ("It is beyond peradventure that in the absence of any contractual terms regarding judicial review, a federal court may vacate or modify an arbitration award only if that award is 'completely irrational,' exhibits a 'manifest disregard of law,' or otherwise falls within one of the grounds set forth in 9 U.S.C. §§ 10 or 11.").

In contrast to the "irrationality" standard, "manifest disregard of the law," the other extra-statutory ground expressly recognized in the Eighth Circuit has been described as follows:

> Under this standard, arbitrators' interpretation of the law is insulated from review, but when they "understand and correctly state the law but proceed to disregard" it, manifest disregard may be shown. *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 750 (8th Cir. 1986) (internal quotation marks and citations omitted). The [plaintiffs] assert only that the "panel was unversed in the niceties of the burden of proof in civil rights actions," not that the panel knew the applicable legal standards and consciously chose to disregard them. Even though the panel did not discuss whether [the defendant] had met its burden of producing evidence . . ., it correctly placed the ultimate burden of persuasion on [the plaintiff] . . . . *See Benson* [*v. Northwest Airlines, Inc.*], 62 F.3d [1108,] 1112 [ (8th Cir. 1995) ] (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 516, 113 S. Ct. 2742, 2752, 125 L. Ed. 2d 407

> (1993)).  Regardless of the wisdom of the panel's
> conclusion, it in no way demonstrates a manifest disregard
> for the law warranting vacation of the arbitration award in
> this case.

*Kiernan*, 137 F.3d at 594-95.  "Manifest disregard of the law" appears to be a

well-settled ground for vacation of or refusal to confirm an arbitration award in other

circuits as well as this one.  *See, e.g.*, *P & P Indus., Inc. v. Sutter*, 179 F.3d 861, 870

(10th Cir. 1999); *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 775 n.9 (11th Cir.

1999); *Gallus Invs., L.P. v. Pudgie's Famous Chicken, Ltd.*, 134 F.3d 231, 233-34

(4th Cir. 1998) (recognizing scrutiny on statutory grounds stated in § 10(a), "and

scrutiny for whether the award evinces a 'manifest disregard' of applicable law").  This

extra-statutory ground has also been recognized by the United States Supreme Court in

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) (citing *Wilko v.*

*Swan*, 346 U.S. 427, 436-437 (1953)).  Indeed, as the Eleventh Circuit Court of

Appeals has pointed out, "every other circuit except the Fifth (which has declined to

adopt any non-statutory grounds for vacating arbitration awards), has expressly

recognized that 'manifest disregard of the law' is an appropriate reason to review and

vacate an arbitration panel's decision."  *Montes v. Shearson Lehman Bros., Inc.*, 128

F.3d 1456, 1460-61 (11th Cir. 1997) (citing cases so holding, and expressly adopting

"manifest disregard of the law" as a ground for vacation, but distinguishing it from

mere errors of law by the arbitrators, which are not grounds for vacation).  Thus, it is

clear, "irrationality" and "manifest disregard of the law" are two extra-statutory

standards that are recognized not only within the Eighth Circuit, but are also

overwhelmingly accepted by the other Circuit Courts of Appeals.

***ii. Arbitrariness and contravention of public policy.*** In addition to the well-
recognized and oft-relied on extra-statutory grounds discussed above, other
extra-statutory standards have been articulated, for example, by the Eleventh Circuit
Court of Appeals. That court will consider three extra-statutory grounds for vacation
of an arbitration award, in addition to the grounds stated in § 10 of the FAA:

> In the Eleventh Circuit, a party may challenge an arbitration
> award without reliance on the FAA if the award is: (1)
> arbitrary and capricious; (2) in contravention of public
> policy; or (3) entered in "manifest disregard of the law."
> *See Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456
> (11th Cir. 1997) (describing the first two grounds and
> adopting the third).

*Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998). Some of the
extra-statutory grounds recognized by the Eleventh Circuit Court of Appeals overlap
those recognized by the Eighth Circuit Court of Appeals. For example, both the Eighth
and Eleventh Circuit Courts of Appeals recognize "manifest disregard of the law" as an
extra-statutory ground for judicial review of an arbitration award; and, although the
Eleventh Circuit Court of Appeals apparently treats "contravention of public policy" as
a separate ground to vacate an arbitration award, contravention of public policy is
encompassed within the "irrationality" standard articulated by the Eighth Circuit Court
of Appeals, as that standard was explained in *Stroh Container Co. See* 783 F.2d at
749-50 ("irrationality" means that the arbitration award "fails to draw its 'essence'
from the agreement, or contravenes a deeply rooted public policy"). Thus, the
additional ground entertained by the Eleventh Circuit Court of Appeals is consideration
of whether the arbitrator's decision is "arbitrary and capricious." *See Scott*, 141 F.3d
at 1017. The Eleventh Circuit Court of Appeals has explained that an arbitration award
is "arbitrary and capricious" only if "'a ground for the arbitrator's decision can[not] be

26

inferred from the facts of the case.'" *Id.* (quoting *Raiford v. Merrill Lynch, Pierce,*
*Fenner & Smith, Inc.*, 903 F.2d 1410, 1413 (11th Cir. 1990)). At first glance, there
appears to be no meaningful distinction, beyond mere choice of words, between the
"arbitrary and capricious" review of the Eleventh Circuit Court of Appeals and the
"irrationality" review recognized in the Eighth Circuit Court of Appeals. *Compare*
*Stroh Container Co.*, 783 F.2d at 749-750 ("irrationality" means that the arbitration
award "fails to draw its 'essence' from the agreement, or contravenes a deeply rooted
public policy") (internal citations omitted), *with Scott*, 141 F.3d at 1017 (noting an
arbitration award is "arbitrary and capricious" only if a reason for the arbitrator's
decision cannot be gleaned from the facts of the case). Nonetheless, the Eighth Circuit
Court of Appeals has expressly rejected "arbitrary and capricious" review of arbitration
awards. *See Alvey, Inc. v. Teamsters Local Union No. 688*, 132 F.3d 1209, 1212 (8th
Cir. 1997) ("We reject the 'arbitrary and capricious' standard of review urged by [the
plaintiff]. That standard governs appeals under the Administrative Procedure Act, see
5 U.S.C. § 706(2)(A), not the Federal Arbitration Act, see 9 U.S.C. § 10."). This
court notes that a specific sort of arbitrariness was asserted in *Alvey*: The party
challenging the arbitration award asserted that the award was "arbitrary and
capricious," because it required that party, an employer, to prove an employee guilty of
violating a company rule beyond "sufficient doubt," relying on a case holding that it
was improper to import a criminal standard of proof "beyond a reasonable doubt" into
the employer-employee context. *See Alvey*, 132 F.3d at 1212. The Eighth Circuit
Court of Appeals found first that the arbitrator had expressly stated that he was not
applying a "reasonable doubt" standard of proof. *Id.* The court then stated that
"[u]nless there is specific controlling language in the collective bargaining agreement,
we agree with the Eleventh Circuit that '[a]n arbitrator's decision allocating the burden

of proof among the parties or in fixing the legal framework for evaluation of a grievance ordinarily cannot be reviewed in federal court.'" *Id.* (quoting *Sullivan, Long & Hagerty, Inc. v. Local 559 Laborers' Int'l Union*, 980 F.2d 1424, 1429 (11th Cir. 1993)). This conclusion may appear to narrow the court's rejection of the "arbitrary and capricious" standard to the circumstances presented, that is, rejection of the applicability of an "arbitrary and capricious" standard to determinations of the allocation of the burden of proof or the legal framework for decision. However, in light of the broad language the appellate court used in *Alvey* and subsequent case law to exclude "arbitrary and capricious" review under the FAA, this court must nevertheless conclude that "arbitrary and capricious" review of arbitration awards under the FAA is not generally available in this circuit.[9]  *See Alvey*, 132 F.3d at 1212 ("arbitrary and

[9] An exception may be presented in circumstances in which the parties have specified such review in their arbitration agreement. *See Alvey*, 132 F.3d at 1212 (rejecting review of an arbitrator's allocation of the burden of proof or fixing the legal framework for evaluation of a grievance "[u]nless there is specific controlling language in the collective bargaining agreement"). However, the circuit courts are split on whether parties to arbitration agreements can expand the scope of judicial review of arbitration awards. *Compare Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 937 (10th Cir. 2001) (holding "parties may not contract for expanded judicial review of arbitration awards"), and *Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991) (noting parties cannot contract for judicial review of arbitration awards because "federal jurisdiction cannot be created by contract"), *with Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 293 (3d Cir.) ("We now join with the great weight of authority and hold that parties may opt out of the FAA's off-the-rack vacatur standards and fashion their own."), *cert. denied*, 534 U.S. 1020 (2001), *LaPine Tech.*, 130 F.3d at 888 (upholding arbitration agreements that contract for heightened judicial scrutiny of an arbitrator's award), and *Gateway Techs., Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 997 (5th Cir. 1995) (holding parties can contract for heightened de novo review of arbitration awards). It is not clear, however, if this exception is available within the Eighth Circuit as the

(continued...)

capricious" is a standard that "governs appeals under the [APA], not the [FAA]"); *see also Hoffman*, 236 F.3d at 462 ("We have repeatedly said that an arbitration award may be challenged 'only' in the previously articulated instances."). This conclusion leads the court to the further conclusion that the "irrationality" review specifically authorized in this circuit, *see, e.g.*, *Val-U Constr. Co.*, 146 F.3d at 578; *Kiernan*, 137 F.3d at 594; *Stroh Container Co.*, 783 F.2d at 749-50, is a more restrictive standard of review than "arbitrary and capricious" review. Indeed, the standard in this circuit is usually stated as "complete" irrationality, suggesting an extreme error with a complete lack of foundation. *See Val-U Constr. Co.*, 146 F.3d at 578; *Kiernan*, 137 F.3d at 594; *Stroh Container Co.*, 783 F.2d at 749-50. Such a restrictive standard of "irrationality" review would be in keeping with the principle that judicial review of arbitration awards is "limited" or "narrow," and an arbitration award cannot be overturned simply because the court would have interpreted the agreement differently, or because the arbitrators erred in interpreting the law or in determining the facts. *See,*

---

[9](...continued)

Circuit Court of Appeals has refrained from resolving this issue. Recently, in *UHC Management Co. v. Computer Sciences Corp.*, the Eighth Circuit noted that contracting for an expanded standard of review is not "yet a foregone conclusion," and expressed reservations about the viability of such an exception:

> It is not clear, however, that parties have any say in how a federal court will review an arbitration award when Congress has ordained a specific, self-limiting procedure for how such a review is to occur [under the FAA]. ... Congress did not authorize de novo review of such an award on its merits; it commanded that when the exceptions do not apply, a federal court has no choice but to confirm.

148 F.3d at 997.

*e.g.*, *UHC Mgmt. Co.*, 148 F.3d at 998.

### 2.    *Application of the standards*

Based on the standards enunciated in the FAA, the only statutory ground for vacation of the arbitral award alleged by R.H. Van Horn is his argument that the award was imperfectly executed. Of the four extra-statutory grounds for vacation asserted by R.H. Van Horn, this court will abstain from addressing his argument that the award was arbitrary and capricious, because, as previously discussed, such a ground for vacation has been specifically rejected by the Eighth Circuit. *See Alvey*, 132 F.3d at 1212 (refusing to recognize the arbitrariness and capriciousness of an arbitral award as a ground for vacation); *see also Hoffman*, 236 F.3d at 461 (noting an arbitral award may *only* be set aside where it is completely irrational or in manifest disregard of the law). Additionally, this court will not address R.H. Van Horn's argument that the award was contrary to public policy as a separate ground for vacation because in the Eighth Circuit, "contravention of public policy" is encompassed within the irrationality standard, also asserted by R.H. Van Horn. *See Stroh Container Co.*, 783 F.2d at 749-50 ("irrationality" means that the arbitration award "fails to draw its 'essence' from the agreement, or contravenes a deeply rooted public policy"). Keeping these principles in mind, the court will proceed to address the merits of R.H. Van Horn's remaining arguments.

### 3.    *R.H. Van Horn's statutory challenge*

As construed above, the court finds that R.H. Van Horn has asserted one statutory challenge to the arbitration award in question here based on his allegations the award was imperfectly executed. *See* 9 U.S.C. § 10(a)(4) (reciting imperfect execution as a ground for vacation). The main crux of the plaintiff's opposition to the arbitrator's award focuses on the arbitrator's division of the stock shares among the shareholders.

30

The plaintiff points out that at the time the Bank shares were converted to shares in the Holding Company, June owned 15.2% of the Bank shares, and Bill owned 13.0% of the total amount of issued shares. Based on the projected ownership of the Holding Company, June was to own 21.8% of the Holding Company's shares, and William was to own 18.7% of those shares. However, the arbitrator's final award bestowed June with 38,500 shares, or 31.3% of the Holding Company's shares and also awarded William 38,500 shares, or 31.3% of the shares. R.H. Van Horn points out that the arbitrator, in his findings of fact, determined that initial ownership of the Holding Company was to be based upon the shares of Bank stock owned by each shareholder, and that William and June, taken together, owned only 28% of the Bank's shares. However, based on the arbitrator's final allocation of the Holding Company Stock, William and June were awarded 62.6% of the Holding Company's shares based on the arbitrator's final division of the Holding Company's common stock. R.H. Van Horn alleges this disparity warrants vacation of the arbitral award because the award was "ambiguous" and therefore, imperfectly executed.

It is clear to this court, however, that R.H. Van Horn has misunderstood the meaning of "imperfectly executed" as intended under 9 U.S.C. § 10. In order for an award to be imperfectly executed under § 10 of the FAA, "a final, definite and mutual award" must not be made, such that the award cannot lend itself to an enforceable interpretation. 9 U.S.C. § 10; *see Gonzalez v. Shearson Lehman Bros., Inc.*, 794 F. Supp. 53, 55 (D.P.R. 1992) (noting that arbitrator's failure to set forth the nature of the compensation "did not render the award so ambiguous that it len[t] itself to no definite interpretation which the court c[ould] enforce") (citing *Refino v. Feuer Transp., Inc.*, 480 F. Supp. 562 (S.D.N.Y. 1979)). Thus, in order for an award to be imperfectly executed, the award itself, *not the reasoning behind the award* as asserted by R.H. Van

Horn, must be indefinite or ambiguous. For example, in *Escobar v. Shearson Lehman Hutton, Inc.*, a case relied upon by R.H. Van Horn in his resistance to the defendants' motion to confirm the arbitration award, the district court vacated the arbitral award because it appeared the arbitrators only adjudicated one claim, when two claims involving two different petitioners, were clearly submitted to arbitration. 762 F. Supp. 461, 464 (D.P.R. 1991). Additionally, in that case, the arbitrators failed to specify how the award should be divided among the two claimants and whether interest should be applied to the principal award. *Id.* Accordingly, a "final" decision was not rendered, in the sense that not all of the issues before the arbitration panel had been resolved by the arbitral award, and the award was not susceptible to an enforceable interpretation. *See id.* However, in cases where the award itself is unambiguous, even in cases where the arbitrator has failed to state the reasons for the award, such an award is not considered to be imperfectly executed. *See, e.g., Remmey v. PaineWebber, Inc.* 32 F.3d 143, 150-51 (4th Cir. 1994) (denying motion to vacate arbitral award where ruling clearly disposed of all claims submitted for arbitration), *cert. denied*, 513 U.S. 1112 (1995); *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990) (refusing to vacate award where award was "clear and concise," even though explanation for the award was not provided). The arbitral award at issue in this case, unlike the award in *Escobar*, disposed of all the claims before it and fully resolved the stock ownership issue. Assuming, *arguendo*, it could rationally be asserted the reasoning behind the arbitrator's decision in this case is somewhat ambiguous, such an assertion would not be sufficient for this court to vacate the award on an imperfect execution theory because the award itself is enforceable and unambiguous. *See Antwine*, 899 F.2d at 412 (finding no reason to vacate arbitration award where award was clear, even though reasons for award were not explicitly set

forth); *Associated Constr. Co. v. Moliterno Stone Sales, Inc.*, 782 F. Supp. 15, 17 (D. Conn. 1992) (holding a failure to issue written findings does not constitute imperfect execution of an arbitral award). Accordingly, R.H. Van Horn's argument with respect to imperfect execution is unavailing because the arbitrator's award in this case completely and fully resolved the issues and claims submitted to arbitration and the award itself is clear, unambiguous and enforceable.

**4.    *R.H. Van Horn's extra-statutory challenges***

This court concluded in its preceding discussion that the extra-statutory challenges to an arbitration award that the Eighth Circuit Court of Appeals has specifically authorized  asserted by R.H. Van Horn are based on "irrationality," which encompasses R.H. Van Horn's challenge with respect to contravention of public policy, and "manifest disregard of the law." The court will consider the challenges it has construed R.H. Van Horn to be making under each of these standards in turn.

**a.    *"Irrationality" challenge***

An arbitrator's award can be vacated if it is "completely irrational," meaning "it fails to draw its essence from the agreement." *Schoch v. InfoUSA, Inc.*, 341 F.3d 785, 788 (8th Cir. 2003) (citing *Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers*, 309 F.3d 1075, 1080 (8th Cir. 2002)), *cert. denied*, 540 U.S. 1180 (2004). "An arbitrator's award draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Id.* (quoting *Johnson Controls, Inc., Sys. & Servs. Div. v. United Ass'n of Journeymen, Local 353*, 39 F.3d 821, 825 (7th Cir. 1994)). To draw its essence from the agreement, "the award must, in some logical way, be derived from the wording or purpose of the contract." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994) (quoting *Bhd. of R.R. Trainmen v.*

*Cent. of Ga Ry.*, 415 F.2d 403, 412 (5th Cir. 1969)). "The single question is whether the award, however arrived at, is rationally inferable . . . ." *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219 n.3 (5th Cir. 1990). The Eighth Circuit has previously recognized that "[i]f an arbitrator attempts to interpret [an] agreement that is silent or ambiguous without considering the parties' intent, his award will fail to draw its essence from the [agreement]." *Bureau of Engraving*, 164 F.3d at 429. For example, in *Bureau of Engraving Inc. v. Graphic Communications International Union, Local 1B*, the Eighth Circuit vacated an arbitral award that was inconsistent with the parties' past practices and their intent as evidenced by prior negotiations. In vacating the arbitral award, the Eighth Circuit stated that an arbitrator's paramount obligation is to apply the parties' agreement in a way that gives effect to their intent. *Id.* at 429 ("'[D]etermining the intent of the parties is the essential inquiry'; if the written agreement is silent, the arbitrator may consider past practice and bargaining history to fill gaps.") (quoting *CSX Transp., Inc. v. United Transp. Union*, 29 F.3d 931, 936 (4th Cir.1994)). This case, however, is clearly distinguishable from *Bureau of Engraving*. First, a written agreement regarding the initial sale or transfer of the Holding Company stock is noticeably absent and the parties dispute whether the long form minutes accurately reflect what transpired at the May of 1980 directors' meeting. Due to the utter lack of a governing written agreement, the arbitrator properly turned to the parties' past practices and their intent in fashioning his award. *See id.* (noting that where a written agreement is silent, the arbitrator may consider past practice to fill in gaps). In arriving at his decision, the arbitrator heard the testimony and received evidence over the course of a three-day hearing. Upon making his findings, it is clear from the arbitrator's decision that he fashioned his award based upon the intent of the parties and their past representations

and practices. For example, the arbitrator based his conclusion that William and June did indeed own stock in the Holding Company on the fact that R.H. Van Horn formed the Holding Company for the purposes of estate planning and tax avoidance. Consequently, the arbitrator acknowledged, based on R.H. Van Horn's intent, it was necessary to place ownership of the common stock in the hands of his children. Further, in determining how much stock William and June owned and whether the purported agreement arrived at during the May 24, 1980 directors' meeting as set forth in the long form minutes was ever acquiesced to by William and June, the arbitrator looked to the parties' past practices and R.H. Van Horn's prior representations. Additionally, the arbitrator's final determination with respect to allocation of the Holding Company stock was based on R.H. Van Horn's numerous representations to other courts, examiners, regulators and tax authorities. It is readily apparent from the arbitrator's ruling, that the arbitrator meticulously parsed out the parties' intent based on the evidence presented during the hearing and fashioned his award based on that intent, as evinced by past practices and representations. It is not for this court to reconsider the merits of an arbitral award or second-guess the arbitrator's credibility determinations:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a[n] [] agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language

35

> of the contract; but the parties having authorized the
> arbitrator to give meaning to the language of the agreement,
> a court should not reject an award on the ground that the
> arbitrator misread the contract. . . . So, too, where it is
> contemplated that the arbitrator will determine remedies for
> contract violations that he finds, courts have no authority to
> disagree with his honest judgment in that respect.

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987)

(citation omitted). Thus, even if this court might have reached a different conclusion

on the facts presented, a determination the court needs not make known, vacatur of the

award is not appropriate. *Id.* at 38. Essentially, R.H. Van Horn asks this court to

reweigh the evidence that was before the arbitrator, which the Eighth Circuit has made

clear is not within a reviewing court's purview. *See Manion v. Nagin*, 392 F.3d 294,

299 (8th Cir. 2004) (noting it was not within the court's prerogative to reweigh the

evidence presented to the arbitrator) (citing *Hoffman*, 236 F.3d at 462). Accordingly,

this court concludes vacation of the arbitral award on this ground is not warranted

because it is clear from the record the arbitrator attempted to comply with the parties'

agreement and acted within the scope of his authority under the parties' written

agreement to arbitrate the stock ownership dispute.[10]  *See Schoch*, 341 F.3d at 790

---

[10]To the extent R.H. Van Horn's resistance can be read as arguing the arbitrator exceeded the scope of his powers under the terms of the arbitration agreement, this court flatly rejects such an argument. An arbitrator exceeds his power, or commits an *excès de pouvoir* when the arbitrator's decision encompasses issues not properly submitted to arbitration pursuant to the parties' arbitration agreement. *See FSC Sec. Corp. v. Freel*, 14 F.3d 1310, 1312-13 (8th Cir. 1994) (holding arbitrator did not exceed authority in deciding the issue of arbitrability because the parties had specifically agreed to submit that issue to arbitration); *Blue Bell, Inc. v. W. Glove Works Ltd.*, 816 F. Supp. 236, 240 (S.D.N.Y. 1993) (noting an arbitrator exceeds the scope of his authority when the award

(continued...)

("Because the arbitrator attempted to comply with the parties' agreement, the award was not completely irrational, as it drew its essence from the agreement.").

---

[10] (…continued)

decides issues not properly before the arbitrator); *see also* W. Michael Reisman, *The Breakdown of the Control Mechanism in ICSID Arbitration*, 1989 DUKE L.J. 739, 744 (defining *excès de pouvoir*). With respect to the current matter before this court, the Letter, which delineates the terms of the parties' arbitration agreement, specifically provides:

> 2. The directors/shareholders will undertake all reasonable efforts to resolve their differences concerning *Glidden ownership* by no later than March 15, 2004.
>
> 3. In the event such efforts produce no definitive agreement, the directors/shareholders further agree to provide to the F[ederal] R[eserve] B[ank] of Chicago and the I[owa] D[ivision of] B[anking] a legal process that provides a binding resolution to this matter by no later than April 15, 2004.
>
> 4. In the event that the conditions of item #3 above are not met by April 15, 2004, the directors/shareholders agree to submit the matter to binding arbitration.

(emphasis added). In accordance with the express terms of the Letter, the issue of the ownership of the Holding Company was properly before the arbitrator. Indeed, although R.H. Van Horn asserts the arbitrator's decision is not rational, "a conclusion reached by the [arbitrator], even if questionable … does not constitute exceeding [his] power." *U.S. ex rel Skip Kirchdorfer, Inc. v. Aegis/Zublin Joint Venture*, 869 F. Supp. 387, 392 (E.D. Va. 1994). R.H. Van Horn is merely claiming the arbitrator reached an incorrect and illogical decision, which is not an appropriate ground for vacatur of an arbitration award. *See Benjamin F. Shaw Co. v. Cincinnati Gas & Elec.*, 633 F. Supp. 841, 843 (S.D. Ohio 1986) (noting "the Court must guard against use of [the defense that the arbitrators exceeded their powers] as a ruse to induce it to review the merits of the arbitrators' decision.").

R.H. Van Horn further avers that the arbitrator's award is violative of public policy because the arbitrator found William and June provided consideration in exchange for stock in the Holding Company, but that there is "no record" valuable consideration was provided. As such, R.H. Van Horn contends the arbitrator's award violates the public policy against unjust enrichment. It is true that, within the Eighth Circuit, a narrow public policy exception is encompassed within the irrationality ground for vacatur of an arbitration award. The public policy exception permits the reviewing court to decline to enforce an arbitration award that contravenes "explicit public policy." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766 (1983). The "public policy, however, must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)). In *United Paperworkers International Union, AFL-CIO v. Misco, Inc.*, the United States Supreme Court clarified the narrow scope of public policy review. 484 U.S. at 44-45. In *Misco*, an employee that ran a machine was caught by police in the company parking lot in a car with marijuana smoke filling the air and a lighted marijuana cigarette in the ashtray. *Id.* at 33. The company terminated the worker's employment for violation of the company rule prohibiting employees from using or possessing narcotics on company property. *Id.* The arbitrator found the evidence was insufficient to establish that the employee had violated the rule and ordered reinstatement of the employee with backpay and full seniority. *Id.* at 34. The district court reversed the arbitral award, and the Fifth Circuit affirmed, on the grounds that reinstatement of the employee would violate the public policy "against the operation of dangerous machinery by persons under the influence of drugs or alcohol." *Id.* at 34-35. The Supreme Court reversed the Fifth

38

Circuit, finding that the a public policy violation had not been established. *Id.* at 45. First, the Supreme Court noted the Fifth Circuit had not drawn its conception of a public policy from existing laws and legal precedents, but rather, relied upon its own considerations of the public interest. *Id.* at 44. Further, the Court held that even if a public policy against the operation of machinery by persons under the influence of narcotics existed, the Fifth Circuit had engaged in impermissible factfinding in order to conclude a violation of that policy had occurred. *Id.* at 44-45. Specifically, the Court concluded that the Fifth Circuit had necessarily, but inappropriately, concluded the employee had in fact smoked marijuana on company property and would likely reoffend in the future. *Id.* Because the arbitrator had not made such findings, the Supreme Court determined the court of appeals erred in vacating the award on public policy grounds.

In light of the Supreme Court's opinion in *Misco*, it is apparent R.H. Van Horn has failed to establish a public policy violation. Even if this court were to conclude there is a public policy against "unjust enrichment," a determination it need not make, in order to find a violation of that policy, this court would have to engage in the type of factfinding condemned by the Supreme Court in *Misco*, by determining the existence, or rather, nonexistence of consideration in contravention to the arbitrator's factual findings. This court will not entertain such a factual analysis and consequently concludes vacatur of the arbitration award is not warranted on this ground.

### b. *"Manifest disregard of the law" challenge*

R.H. Van Horn further avers the arbitration decision was in manifest disregard of the law. In support of his allegation, R.H. Van Horn points to the fact the arbitrator failed to cite any case law or statute in the arbitration decision as a rationale for the arbitral award. He further asserts the evidence clearly demonstrated William and June

did not pay consideration for their stock in the Holding Company and that the arbitrator's conclusion to the contrary evinces a manifest disregard for the law warranting vacation of the award. It is clear, however, at least in the eyes of this court, that R.H. Van Horn has also misunderstood the heavy burden that must be met in order to vacate an arbitral award because it was in manifest disregard of the law.

An arbitrator's award "manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." *Kiernan*, 137 F.3d at 594-95 (citing *Stroh Container Co.*, 783 F.2d at 750). Manifest disregard of the law "is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (citations omitted). "[A reviewing court's] disagreement with an arbitrator's interpretation of the law or determination of the facts is an insufficient basis for setting aside his award." *El Dorado Sch. Dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843, 847 (8th Cir. 2001) (citing *Hoffman*, 236 F.3d at 462). More recently, the Eighth Circuit posited what must be demonstrated in order to warrant vacatur on the grounds of a manifest disregard of the law:

> To demonstrate that arbitrators manifestly disregarded the law, a party must show that the arbitrators were fully aware of the governing law and refused to apply it. The disregard must appear clearly in the record of the arbitration, and there must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it.

*Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005) (internal citations and quotations omitted). The court finds that none of R.H. Van Horn's specific assertions amount to a manifest disregard of the law by the arbitrator. Rather, it

appears that R.H. Van Horn is attempting to relitigate the factual underpinnings of this dispute with this court under the guise that the arbitrator manifestly disregarded the law. Specifically, R.H. Van Horn's averments that the arbitrator incorrectly concluded William and June received their stock in exchange for consideration amount to, at most, an unreviewable factual determination and corresponding legal conclusion. *See UHC Mgmt. Co.*, 148 F.3d at 998 ("'We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts.'") (quoting *Kiernan*, 137 F.3d at 594). While R.H. Van Horn may not agree with the arbitrator's findings of fact or application of the pertinent legal principles to those facts, he must point to evidence other than the result in order to demonstrate an intentional disregard of the law on the part of the arbitrator. *Biscanin*, 407 F.3d at 907. This, he has failed to do. Although R.H. Van Horn questions the wisdom of the arbitrator's decision in light of the purported evidence presented during the hearings, even if this court were persuaded by such an argument, it in no way demonstrates a manifest disregard of the law. *See Keirnan*, 137 F.3d at 594-95 ("Regardless of the wisdom of the [arbitration] panel's [legal] conclusion, it in no way demonstrates a manifest disregard for the law warranting vacation of the arbitration award in this case.").

Further, R.H. Van Horn's claims with respect to the arbitrator's failure to provide a rationale or reasoning behind the arbitral award are also unpersuasive. This issue has been previously raised, and rejected by the Eighth Circuit, in *Stroh Container Co.*, 783 F.2d at 750-51. In *Stroh Container Co.*, the Eighth Circuit articulated in detail the reasons such an argument fails to pass muster:

> In the case before us, the arbitrator['s] decision does not
> clearly delineate the law applied, nor expound the reasoning

and analysis used. Rather, the award presents . . . only a cursory discussion of what the arbitrator[ ] considered to be the key points underlying the award. It therefore cannot be said that it clearly appears that the arbitrator [ ] identified applicable law and proceeded to reach a contrary position in spite of it. Nor does the absence of express reasoning by the arbitrator [ ] support the conclusion that [he] disregarded the law. Arbitrators are not required to elaborate their reasoning supporting an award, and to allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper functioning of the arbitral process. . . . We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts.

783 F.2d at 750-51; *see PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 994 (8th Cir. 1999) ("Arbitration panels are not required to explain their decisions."), *cert. denied*, 529 U.S. 1020 (2000). Thus, in this case, while the arbitrator elected to issue a written decision in this case, he did not specifically discuss the legal principles or case law supporting his conclusions. "It therefore cannot be said that it clearly appears that the arbitrator[ ] identified applicable law and proceeded to reach a contrary position in spite of it." *See Stroh Container Co.*, 783 F.2d at 750; *see also Kiernan*, 137 F.3d at 594-95. Accordingly, in light of the unequivocal guidance from the Eighth Circuit with respect to this issue, this court is compelled to conclude that R.H. Van Horn is not entitled to denial of confirmation of the arbitration on the basis of "manifest disregard of law."

### *E. Defendants' Motion To Dismiss Remaining Counterclaims*

In a separate motion, the defendants have requested that this court dismiss their remaining counterclaims of breach of fiduciary duty and conversion against R.H. Van Horn. (Doc. No. 58). Specifically, the motion states that the defendants and counterclaimants, by and through their attorneys, dismiss all remaining counterclaims in this action without prejudice. *Id.* The defendants' motion does not comport with the requirements of Rule 41(a)(1) of the Federal Rules of Civil Procedure, because an answer has been filed by the plaintiff (Doc. No. 11), and the motion to dismiss the remaining counterclaims is not signed by all parties who have appeared in the action. *See* FED. R. CIV. P. 41(a)(1). Consequently, dismissal requires an order of the court. *See* FED. R. CIV. P. 41(a)(2). The plaintiff did not file any response to the defendants' motion to dismiss. Accordingly, the court finds that, under the circumstances presented here, dismissal, without prejudice, of the remaining counterclaims of breach of fiduciary duty and conversion with respect to both R.H. Van Horn and John, as requested by the defendants, is appropriate.

## *III.  CONCLUSION*

R.H. Van Horn has failed to proffer sufficient evidence demonstrating any statutory or extra-statutory ground for vacation or denial of confirmation under § 10 of the FAA. "Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties . . . can be presumed to have been well versed in the consequences of their decision to resolve their disputes in this manner." *Stroh Container Co.*, 783 F.2d at 751. Moreover, "[a]rbitration is not a perfect system of justice, nor it is [sic] designed to be." *Hoffman*, 236 F.3d at 462 (citation omitted). Rather, it "is designed primarily

to avoid the complex, time-consuming and costly alternative of litigation." *Id.* Here, the parties agreed to resolve this "dispute quickly and efficiently through arbitration." *Schoch*, 341 F.3d at 791. In so doing, both parties "got exactly what [they] bargained for"—an efficient resolution to their dispute concerning the ownership of the Holding Company. *Id.* "Having entered such a contract, both parties must subsequently abide by the rules to which [they] agreed." *Hoffman*, 236 F.3d at 463 (citation omitted). Accordingly, William and June's motion to confirm the arbitration award (Doc. No. 56) is **granted** and R.H. Van Horn's motion to vacate the award (Doc. Nos. 59, 62) is **denied**. Costs are to be divided evenly among the parties, with each party bearing the expense of their own witnesses.

With respect to the defendants' motions to dismiss, the court **grants** the defendants' September 1, 2005 "Dismissal of Counterclaims Against Plaintiff R.H. Van Horn" (Doc. No. 57) and **dismisses, without prejudice, all remaining counterclaims against the plaintiff**. The court further **grants** the defendants' September 1, 2005 "Dismissal of Counterclaims Against Involuntary Plaintiff John Carl Van Horn" (Doc. No. 58) and **dismisses, without prejudice, all remaining counterclaims against the involuntary plaintiff.**

**IT IS SO ORDERED.**

**DATED** this 19th day of October, 2005.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT
COURT
NORTHERN DISTRICT OF IOWA